## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

HANNAH HUDSON

    Defendant.

Case No. 16-20034-02-JAR

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Hannah Hudson's Motion for Release from Custody (Doc. 104) pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons provided below, Hudson's motion is denied.

**I.     Background**

On April 11, 2017 Hudson pleaded guilty to conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 846, in Case No. 16-20033;[1] and she pleaded guilty to conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 846, in Case No. 16-20034.[2] On July 24, 2019, this Court sentenced Hudson to a 120-month term of imprisonment, a three-year term of supervised release, and a $100 special assessment in Case No. 16-20033.[3] The same day, this Court imposed an identical sentence in Case No. 16-20034, to run concurrent with the sentence in Case No. 16-20033.[4]

---

[1] Case No. 16-20033-02-JAR, Doc. 40.

[2] Doc. 52.

[3] Case No. 16-20033-02-JAR, Doc. 83.

[4] Doc. 98. Judge Carlos Murguia imposed the sentences in these two cases and resigned his commission early in 2020.

Hudson is currently incarcerated at Federal Prison Camp ("FPC") Alderson in West Virginia. As of January 4, 2021, the Bureau of Prisons ("BOP") reports that there are 527 inmates housed at FPC Alderson, of which 353 have been tested for COVID-19.[5] Twelve inmates at this facility have tested positive.[6] All twelve of these inmates have recovered, such that there are currently no inmates who are positive for COVID-19, although there are currently two pending test results.[7] There have been no inmate deaths from COVID-19 at FPC Alderson.[8]

Hudson is forty-seven years old, and her projected release date is March 7, 2028.

On October 26, 2020 Hudson filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[9] In support of her motion, Hudson states that she suffers from obesity, borderline hypertension, and an undiagnosed disorder of one breast. She also notes that her blood is type A. These underlying medical conditions, Hudson argues, put her at an increased risk of severe complications should she contract COVID-19 in prison. Hudson requests that her sentence be reduced to time served and that her term of supervised release be extended from 36 months to 122 months, with a condition of 86 months home confinement. Hudson offers a home plan that she will reside with her mother and stepmother, renew her real estate license, work full time and seek a master's degree. During the more than three years that Hudson was on pretrial release in Case Nos. 16-20033 and 16-20034, she lived with her mother in the same home, worked two full-time jobs and otherwise satisfied all conditions of her pretrial release without

---

[5] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus (last visited Jan. 4. 2021).

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] Hudson filed an identical motion for compassionate release in Case No. 16-20033. *See* Case No. 16-20033-02-JAR, Doc. 89.

2

any concerns, problems, or violations. The United States Probation Office has approved Hudson's proposed home plan.[10] Hudson is represented by counsel on her motions for compassionate release.

## II. Legal Standards

"[I]t is well-settled that '[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"[11] Section 3582(c) permits a court to modify a term of imprisonment for compassionate release only if certain exceptions apply. Until recently, these exceptions required the BOP to move on a defendant's behalf. In 2018, however, the First Step Act modified the compassionate release statute, permitting a defendant to bring his own motion for relief.[12] But a defendant may bring a motion for compassionate release from custody only if the defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[13] Unless a defendant meets this exhaustion requirement, the court lacks jurisdiction to modify the sentence or grant relief.[14]

---

[10] Doc. 113-6.

[11] *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).

[12] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

[13] 18 U.S.C. § 3582(c)(1)(A).

[14] *United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence); *see also United States v. Walker*, No. 13-10051-EFM, 2020 WL 2101369, at *2 (D. Kan. May 1, 2020) ("The administrative exhaustion requirement is jurisdictional and cannot be waived."); *United States v. Read-Forbes*, 454 F. Supp. 3d 1113, 1116–17 (D. Kan. 2020) (analyzing the text, context, and historical treatment of § 3582(c)'s subsections to determine the exhaustion requirement is jurisdictional); *cf. United States v. Younger*, No. 16-40012-DDC, 2020 WL 3429490, at *3 (D. Kan. June 23, 2020) (reasoning that, absent direct guidance from the Tenth Circuit, the Sixth Circuit's approach articulated in *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), is "highly persuasive," and concluding that § 3582(c)(1)(A)'s exhaustion requirement is a claims-processing rule).

3

Where a defendant has satisfied the exhaustion requirement, a court may reduce the defendant's proposed sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court determines: (1) "extraordinary and compelling reasons warrant such a reduction"; or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) . . . and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community."[15]  In addition, a court must ensure that any reduction in a defendant's sentence under this statute is "consistent with applicable policy statements issued by the Sentencing Commission."[16]

The Sentencing Commission's policy statement pertaining to sentence reductions under 18 U.S.C. § 3582(c)(1)(A) is found at U.S.S.G. § 1B1.13.  The comments to § 1B1.13 contemplate four categories of extraordinary, compelling circumstances: (1) the defendant is suffering from a terminal illness, i.e., a serious, advanced illness with an end-of-life trajectory; (2) the defendant is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which the defendant is not expected to recover; (3) the defendant is at least sixty-five years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten years or seventy-five percent of the term of imprisonment, whichever is less; and (4) the defendant needs

---

[15] 18 U.S.C. § 3582(c)(1)(A).

[16] *Id.*; *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (holding the Sentencing Commission policy statement regarding 18 U.S.C. § 3582(c)(2) remains mandatory in the wake of *United States v. Booker*, 543 U.S. 220 (2005)).

4

to serve as a caregiver for a minor child, spouse, or registered partner.[17]  A defendant requesting compassionate release bears the burden of establishing that compassionate release is warranted under the statute.[18]

### III. Discussion

#### A. Exhaustion

Hudson twice submitted requests for compassionate release to the warden of FPC Alderson—on July 12, 2020[19] and again on or about October 23, 2020, which the warden denied.[20]  Hudson first provided evidence of exhaustion in her reply responding to the government's argument that Hudson had not borne her burden of showing exhaustion.[21]

The Court notes that in Hudson's first compassionate release request to the warden, she offered no medical reasons in support of her request.  In her second request, Hudson offered her obesity as a reason supporting her request.  In her motions for compassionate release, Hudson now offers obesity, as well as other underlying medical conditions in support for her request: borderline hypertension, an undiagnosed disorder of the breast that needs to be biopsied, and the fact that her blood is type A.  The government sometimes argues that when a compassionate release motion does not mirror the grounds cited in the request submitted to the warden, the defendant has failed to exhaust all issues, the so-called issue exhaustion argument.[22]  But this

---

[17] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (U.S. Sentencing Comm'n 2018).

[18] *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (finding that defendant bears the burden of demonstrating entitlement to relief under § 3582(c)(2)); *United States v. Bright*, No. 14-10098-JTM, 2020 WL 473323, at *1 (D. Kan. Jan. 29, 2020) (noting that the "extraordinary and compelling" standard imposes a heavy burden on an inmate seeking compassionate release under § 3582(c)(1)(A)).

[19] Doc. 113-1.

[20] Doc. 113-2.

[21] Doc. 113.

[22] *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  The underlying concept is also referred to as "administrative waiver" or "issue waiver," based on the notion that an issue not raised in such an administrative

5

Court has repeatedly rejected the issue exhaustion challenge to motions for compassionate release.[23] The Court finds that Hudson's second submission to the warden of her facility satisfies the exhaustion requirement, and the Court has jurisdiction to decide Hudson's motion based on all grounds presented therein.

### B.     Extraordinary and Compelling Reasons

Having determined that Hudson has properly exhausted administrative remedies, the Court must next determine whether extraordinary and compelling reasons warrant reducing her sentence to time served. Congress permitted the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."[24]

The Sentencing Commission's comments to § 1B1.13 set forth four circumstances under which extraordinary and compelling reasons may exist: (1) the defendant is suffering from a terminal illness, i.e., a serious, advanced illness with an end-of-life trajectory; (2) the defendant is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which the defendant is not expected to recover; (3) the defendant is at least sixty-five years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten years or seventy-five

---

proceeding has been "waived." *See generally Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1148 (D.C. Cir. 2005).

[23] *See United States v. Parada*, No. 5:03-40053-JAR-1, 2020 WL 4589781, at *4–5 (D. Kan. Aug. 10, 2020) (finding that "a judicially created issue-exhaustion requirement is inappropriate" in the compassionate release context because the administrative process for compassionate release is inquisitive rather than adversarial (quoting *Sims v. United States*, 530 U.S. 103, 111 (2000))).

[24] 28 U.S.C. § 994(t).

percent of the term of imprisonment, whichever is less; and (4) the defendant needs to serve as a caregiver for a minor child, spouse, or registered partner.[25]

Hudson's obesity is alone an extraordinary and compelling reason for a sentence reduction pursuant to the Centers for Disease Control and Prevention's ("CDC") guidance on medical conditions that increase an individual's risk of severe illness from COVID-19.[26] The CDC's guidance also provides that hypertension elevates the risk of COVID-19.[27] Although Hudson's medical records characterize her hypertension as borderline, the most recent records indicate that she is being evaluated to determine if she needs medication for hypertension. But Hudson's "undiagnosed disorder of the breast" is not a qualifying underlying condition.[28] Although a biopsy was considered after an indeterminate ultrasound, the most recent medical record states that Hudson merely needs a follow-up mammogram.[29] Moreover, the medical records indicate that Hudson had asked to delay any biopsy because she believed the disorder revealed in the imaging was from her past breast reduction surgery.[30]

The Court finds that Hudson's obesity in the context of the COVID-19 pandemic constitutes an extraordinary and compelling reason for a sentence reduction, and her borderline hypertension provides further reason.

---

[25] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (A) through (C) (U.S. Sentencing Comm'n 2018).

[26] *See* Centers for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated Dec. 29, 2020).

[27] *Id.*

[28] Doc. 113 at 2.

[29] Doc. 113-3.

[30] *Id.*

7

### C. Section 3553(a) Factors

When a defendant demonstrates that he or she has an extraordinary or compelling reason for a sentence reduction, the Court must consider whether such reduction would comply with the familiar sentencing factors enumerated in 18 U.S.C. § 3553(a). That statute requires courts to "impose a sentence sufficient, but not greater than necessary" in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;
>  (C) to protect the public from further crimes of the defendant; and
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.[31]

While the Court takes all seven § 3553 factors into account, those most pertinent to Hudson's case are factors (1), (2), and (4). In consideration of these factors, the Court concludes that releasing Hudson now would not leave her with a sentence that is "sufficient, but not greater than necessary."[32]

---

[31] 18 U.S.C. § 3553(a).

[32] *Id.*

8

First, Hudson was convicted of two serious crimes: two separate conspiracies to distribute or possess with intent to distribute more than fifty grams of methamphetamine. Both offenses carry a statutory mandatory minimum of ten years of prison. The Presentence Investigation Report ("PSIR") held Hudson culpable for 7.79 kilograms of actual methamphetamine.[33] Had Judge Murguia imposed a Guidelines sentence in these cases, Hudson's sentence would have been at least 324 months. Instead Judge Murguia sentenced Hudson to the mandatory minimum in each case, with the sentences running concurrently. The PSIR details statements of several confidential informants, as well as Hudson's own statements, which collectively evidence that Hudson purchased methamphetamine in quantities ranging from several ounces to multiple pounds at a time. The methamphetamine was imported from the Zeta Cartel in Mexico. And, Hudson sold methamphetamine to other drug dealers in quantities ranging from partial ounces to multiple ounces at a time. Hudson operated her drug business out of her home and possessed a firearm as part of her drug business. Hudson managed or led others in this drug enterprise. In short, this was a serious, ongoing, significant drug trafficking business comprising two separate conspiracies.

Much of Hudson's history and characteristics are favorable. Though she was addicted to methamphetamine, once arrested in this case she performed well on supervised release for over three years. In her time on pretrial release, Hudson worked two full-time janitorial jobs, day and night, volunteered in the community, took the initiative of seeking psychological and psychiatric treatment, completed an intensive drug treatment program and remained sober. Hudson has had no disciplinary infractions and has participated in many programs offered by the BOP. She now offers a home plan that would have her reside in the same stable environment she lived in during

---

[33] Doc. 74 ¶ 41.

her time on pretrial release. Hudson's future employment prospects are favorable. She was a real estate agent and plans to renew her license as well as pursue a master's degree.

Yet, of the 120-month sentence she received, which was 204 months less than the bottom of her Guidelines range, Hudson has only served fifteen months. She surrendered to FPC Alderson on September 3, 2019, and assuming good time credit, her projected release date is March 7, 2028. In short, Hudson has served just over one year of her ten-year sentence. And given the serious nature of her offense, the Court cannot conclude that a sentence of time served, effectively fifteen months of a 120-month sentence is a sentence that is sufficient but not greater than necessary. The Court cannot find that a fifteen-month sentence in this case is a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence.

**IT IS THEREFORE ORDERED** that the Motion for Release from Custody (Doc. 104) is **DENIED.**

**IT IS SO ORDERED.**

Dated: January 5, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
